**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| CIELO JEAN "CJ" GIBSON, DESSIE MITCHESON, KIMBERLY "KIM" COZZENS, LINA POSADA, KRYSTAL FORSCUTT HIPWELL, RACHEL BERNSTEIN a/k/a RACHEL KOREN, TIFFANY GRAY a/k/a TIFFANY TOTH, URSULA MAYES, KARA MONACO, and RHIAN SUGDEN, | : : : : : : : : | |
| | : | C.A. No. |
| Plaintiffs, | : : | |
| v. | : : | **COMPLAINT** |
| AMATO'S TSD WATERING TROUGH LLC d/b/a THE WATERING TROUGH and SALVATORE AMATO | : : : : | (Jury Trial Demanded) |
| Defendants. | : : : | |

Plaintiffs CIELO JEAN "CJ" GIBSON, DESSIE MITCHESON, KIMBERLY "KIM"
COZZENS, LINA POSADA, KRYSTAL FORSCUTT HIPWELL, RACHEL BERNSTEIN
a/k/a RACHEL KOREN, TIFFANY GRAY a/k/a TIFFANY TOTH, URSULA MAYES, KARA
MONACO, and RHIAN SUGDEN (collectively, "Plaintiffs"), by and through their undersigned
counsel, and for their Complaint ("Complaint") against Defendant AMATO'S TSD
WATERING TROUGH LLC d/b/a THE WATERING TROUGH and SALVATORE AMATO
(collectively "Defendants") respectfully allege as follows:

## BACKGROUND

1.      This is an action for damages and injunctive relief relating to Defendants'
misappropriation, alteration, and unauthorized publication and use in advertising of images of
Plaintiffs, each of whom are well-known professional models, to promote their night club, The
Watering Trough located in Mount Joy, Pennsylvania ("Watering Trough" or the "Club").

- 1 -

2.      As detailed below, Defendants' misappropriation and unauthorized use of Plaintiffs' images, photos and likenesses (collectively, "Images") constitutes: a) violation of section 43 of the Lanham Act, 15 U.S.C. § 1125(a)(1), which prohibits both false or misleading representations of fact in commercial advertising and the false or misleading use of a person's image for commercial purposes; b) violation of each Plaintiff's common law right of privacy as pertains to Defendants' appropriation of their likeness; c) violation of Pennsylvania's statutory right of publicity, 42 Pa. Cons. Stat. § 8316; d) violation of the Pennsylvania's Unfair Trade Practices Act and Consumer Protection Law ("UTPCPL"), 73 P.S. § 201-1-201-9.2; e) defamation; and f) various common law torts, including conversion.

3.      In addition to the actual, punitive, and exemplary damages set forth below, Plaintiffs likewise seek an Order from this Court permanently enjoining Defendants from using their Images to promote any Club, via any medium.

## JURISDICTION & VENUE

4.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because Plaintiffs have stated claims under, *inter alia*, the Lanham Act, 15 U.S.C. § 1125(a)(1), and jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

5.      As set forth immediately below, Plaintiffs are, and at all times relevant to this action have been, professional models who reside throughout the United States.

6.      According to publicly available records, Defendant Amato's TSD Watering Trough LLC is a limited liability company formed under the laws of the state of Pennsylvania, with its principal place of business located at 905 West Main Street, Mount Joy, Pennsylvania 17552. Amato's TSD Watering Trough LLC operates The Watering Trough, which is located at 905 West Main Street, Mount Joy, Pennsylvania 17552.

7. According to publicly available records, Defendant Salvatore Amato is an individual operating under the laws of the state of Pennsylvania, who is an Owner and/or CEO of Amato's TSD Watering Trough LLC.

8. Venue is proper in the United States District Court for the Eastern District of Pennsylvania because Mount Joy, Pennsylvania is Defendants' principal place of business.

9. A significant portion of the alleged causes of action arose and accrued in Mount Joy, Pennsylvania and the center of gravity for a significant portion of all relevant events alleged in this Complaint is predominately located in Mount Joy, Pennsylvania.

## PARTIES

*Plaintiffs*

10. Plaintiff Cielo Jean "CJ" Gibson ("Gibson") is a well-known professional model, and a resident of Los Angeles County, California.

11. Plaintiff Dessie Mitcheson ("Mitcheson") is a well-known professional model, and a resident of Orange County, California.

12. Plaintiff Kimberly "Kim" Cozzens ("Cozzens") is a well-known professional model, and a resident of Santa Clara County, California.

13. Plaintiff, Lina Posada ("Posada") is a well-known professional model, and a resident of San Bernardino County, California.

14. Plaintiff Krystal Forscutt Hipwell ("Hipwell") is a well-known professional model, and a resident of Australia.

15. Plaintiff Rachel Bernstein a/k/a Rachel Koren ("Koren") is a well-known professional model, and a resident of Los Angeles County, California.

16.     Plaintiff Tiffany Gray a/k/a Tiffany Toth ("Gray") is a well-known professional model, and a resident of Orange County, California.

17.     Plaintiff Ursula Mayes ("Mayes") is a well-known professional model, and a resident of Orange County, California.

18.     Plaintiff Kara Monaco ("Monaco") is a well-known professional model, and a resident of Orange County, Florida.

19.     Plaintiff Rhian Sugden ("Sugden") is a well-known professional model, and a resident of Prestwich, England.

*Defendants*

20.     According to publicly available records, Defendant Amato's TSD Watering Trough LLC is formed under the laws of the state of Pennsylvania.  During times relevant to this action, Amato's TSD Watering Trough LLC operated The Watering Trough in Mount Joy, Pennsylvania.

## FACTUAL ALLEGATIONS

21.     As set forth immediately below, each Plaintiff is a well-known professional model who earns her livelihood modeling and licensing her Images to companies, magazines, and individuals for the purpose of advertising products and services.

22.     Plaintiffs' careers in the modeling industry place a high degree of value on their good will and reputation, which is critical in order to maximize their earning potential, book modeling contracts, and establish each of their individual brands.  In furtherance of establishing, and maintaining, their brands, Plaintiffs are necessarily selective concerning the companies, and brands, for which they model.

23.     Each of the Plaintiffs' Images was misappropriated, and intentionally altered, by one or more of the Defendants in order to make it appear that they worked at, endorsed or were otherwise associated or affiliated with Watering Trough.

24.     In the case of every Plaintiff, such appearance was false.

25.     Moreover, in every case this misappropriation occurred without any Plaintiff's knowledge, consent or authorization, at no point did any Plaintiff ever receive any remuneration for Defendants' improper and illegal use of their Images, and Defendants' improper and illegal use of Plaintiffs' Images have caused each Plaintiff to suffer substantial damages.

26.     Further, in certain cases Defendants misappropriated Plaintiffs' advertising ideas (or their licensees') because the Images they misappropriated came from Plaintiffs' own social media pages, which each Plaintiff uses to market herself to potential clients, grow her fan base, and build and maintain her brand.

***Plaintiffs' Backgrounds and Careers***

27.     Gibson is an American model who enjoys great success in her industry. Gibson was the Import Tuner magazine Model Search winner. Gibson is currently a model for the Falken Drift Team, and can be seen at Formula Drift events. Gibson has also appeared in several magazines including FHM, American Curves, Supreme, MuscleMag International, Muscle & Fitness, and Teeze, Gibson has also modeled for the world's largest PWC Engine Re manufacturer, Short Block Technologies, better known as SBT, Inc. in Clearwater, Florida. Gibson appeared in a home workout video called ENVY as a character named Eliana, which stands for the "E" in ENVY. Gibson continues to promote and market a number of different companies' sport and fitness equipment and is in the process of developing her own line of supplements and fitness clothing.

28.     That we know of, Gibson is depicted in advertising to promote Watering Trough on its Facebook page. This Image was intentionally altered to make it appear that Gibson was either an employee working at Watering Trough, that she endorsed the Club, or that she was otherwise associated or affiliated with the Club.

29.     Gibson has never been employed at Watering Trough, has never been hired to endorse Watering Trough, has never been otherwise associated or affiliated with Watering Trough, has received no remuneration for Defendants' unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

30.     Mitcheson competed for Miss Pennsylvania USA at eighteen and placed in the top ten. Shortly after, she became the face of Playboy Intimates, the face of MGM Grand Las Vegas, and Miss Pennsylvania Intercontinental. Mitcheson entered Maxim magazine's annual "Hometown Hottie" contest along with thousands of models, she was crowned Maxim magazine's "Hometown Hottie". Later that year, Mitcheson was #100 on Maxim's "Hot 100" list. She has graced the pages of multiple issues of Maxim, including a three page spread, two centerfolds, and the cover for the May 2014 "Navy" issue. Mitcheson was recently featured as the main Tecate Beer ring girl in the biggest Pay-per-View event in history, the Mayweather v. Pacquiao fight, which gave her worldwide visibility with over 100 million viewers. This triggered a huge demand for her modeling services. She has been featured by national advertisers such as Crest toothpaste, Tecate, Roma Costumes, and J. Valentine. Mitcheson currently has 406 thousand Instagram followers, over 22 thousand Facebook followers, and 13.9 thousand Twitter followers.[1]

---

[1] In the modeling world and talent industry (in general), the number of online Instagram "followers", Twitter "followers", and or Facebook "likes" is a strong factor in determining a model's earning capacity.

31.     That we know of, Mitcheson is depicted in advertising to promote Watering Trough on its Facebook page. This Image was intentionally altered to make it appear that Mitcheson was either an employee working at Watering Trough that she endorsed the Club, or that she was otherwise associated or affiliated with the Club.

32.     Mitcheson has never been employed at Watering Trough, has never been hired to endorse Watering Trough, has never been otherwise associated or affiliated with Watering Trough, has received no remuneration for Defendants' unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

33.     Cozzens is a model and actress who has appeared on an Old Spice national commercial, as well as a New Amsterdam Vodka national commercial. She has modeled for campaigns with Guess, Old Spice, Grey Goose, Sephora Cosmetics, Con Air Hair Tools, Sketcher Shoes, and many more. She has also modeled for Maxim magazine, Sandals Resort, Dodge, and Pepsi to name a few. Kim in total, has signed with 12 top agencies internationally, two of them being LA Models and LATALENT.

34.     That we know of, Cozzens is depicted in advertising to promote Watering Trough on its Facebook page. These Images were intentionally altered to make it appear that Cozzens was either an employee working at Watering Trough that she endorsed the Club, or that she was otherwise associated or affiliated with the Club.

35.     Cozzens has never been employed at Watering Trough, has never been hired to endorse Watering Trough, has never been otherwise associated or affiliated with Watering Trough, has received no remuneration for Defendants' unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

36.     Posada is a fashion model and designer. A native of Colombia, Posada is best known as a model for the Besame and Espiral lingerie collections. Posada has also modeled for Paradizia Swimwear, Babalu Swimwear, Irgus Swinwear, Ujeans, as well as many others. She currently has 95.1 thousand Instagram followers, 2.99 thousand YouTube subscribers, 8,931 Facebook followers, and over 5.6 thousand Twitter followers.

37.     That we know of, Posada is depicted in advertising to promote Watering Trough on its Facebook page. This Image was intentionally altered to make it appear that Posada was either an employee working at Watering Trough that she endorsed the Club, or that she was otherwise associated or affiliated with the Club.

38.     Posada has never been employed at Watering Trough, has never been hired to endorse Watering Trough, has never been otherwise associated or affiliated with Watering Trough, has received no remuneration for Defendants' unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

39.     Hipwell is an Australian model and reality TV contestant and personality. Hipwell has appeared on over 20 Men's magazine covers such as Zoo Weekly, FHM, and Ralph as well as the video game Need for Speed: ProStreet. Hipwell starred in Australian Big Brother series and then another Australian reality show, It Takes Two. Hipwell then became a regular guest on Bigpond GameArena, Benny and Richie show, and the long running series Packed to the Rafters. Hipwell is married to Neil Hipwell and together they have an extremely successful building and renovations company Future Flip (www.futureflip.com.au).

40.     That we know of, Hipwell is depicted in advertising to promote Watering Trough on its Facebook page. This Image was intentionally altered to make it appear that Hipwell was either an employee working at Watering Trough that she endorsed the Club, or that she was

otherwise associated or affiliated with the Club.

41.     Hipwell has never been employed at Watering Trough, has never been hired to

endorse Watering Trough, has never been otherwise associated or affiliated with Watering

Trough, has received no remuneration for Defendants' unauthorized use of her Image, and has

suffered, and will continue to suffer, damages as a result of same.

42.     Koren is an international model who has walked runways for fashion shows in

Miami's Mercedes Benz Fashion Week, filmed for the Travel TV show "Bikini Destinations" all

over the world, shot for major campaigns in Los Angeles, CA, and is the face of many brands.

Koren appeared in a campaign for MIDORI with Kim Kardashian and in the movie "Date Night"

with Steve Carell and Tina Fey. She also played the character of "Sue Emory" in an episode

of "The Closer" where she can be seen doing her own stunts. She has been published in major

campaigns and worked for companies such as Nike, Reebok, Affliction Clothing, Volcom, Body

Glove, Sinful, American Customs, Alo, Modern Salon Magazine, No Fear, Axe Body Spray,

Paul Mitchell, Vibra Magazine, Launch Pad Magazine, Cut & Dry Magazine, Hairdo Magazine,

Sunset Tan, Divine Boutique, Esquire Magazine, Vogue Magazine, True Religion, Jessica

Simpson Swimwear, Ed Hardy, Christian Audigier, Smet, Rebel X Magazine, SNI Swimwear,

Tommy Bahama, Roma, J Valentine, Sunsets Inc, B Swim, Love Culture, Maxim, Viva Glam

Magazine, Fantasy Lingerie, Elegant Moments, So Cal Swimwear, No Fear, Swim Magazine,

American Honey, and Have Faith Swimwear.  She currently owns her own company, Cashmere

Hair Extensions, which appeared on the show "Shark Tank" in 2013.

43.     That we know of, Koren is depicted in advertising to promote Watering Trough

on its Facebook page. This Image was intentionally altered to make it appear that Koren was

either an employee working at Watering Trough that she endorsed the Club, or that she was

otherwise associated or affiliated with the Club.

44.     Koren has never been employed at Watering Trough, has never been hired to endorse Watering Trough, has never been otherwise associated or affiliated with Watering Trough, has received no remuneration for Defendants' unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

45.     Gray is an extremely successful model that takes great pride in holding the prestigious title of a Playboy Playmate. Gray was the Playboy "Cyber Girl of the Month" for May 2006. She then went on to pose for three pictorials under Playboy's Fresh Faces. Moreover, she has not only been featured in such magazines as Super Street Bike, Import Tuner, Sport Truck, Iron Man, Seventeen, and Maxim, but has also posed for various catalogs. Gray currently has over 3.7 million Facebook followers, 1.4 million Instagram followers, and over 305 thousand Twitter followers, and 1.08 thousand YouTube subscribers

46.     That we know of, Gray is depicted in advertising to promote Watering Trough on its Facebook page. These Images were intentionally altered to make it appear that Gray was either an employee working at Watering Trough that she endorsed the Club, or that she was otherwise associated or affiliated with the Club.

47.     Gray has never been employed at Watering Trough, has never been hired to endorse Watering Trough, has never been otherwise associated or affiliated with Watering Trough, has received no remuneration for Defendants' unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

48.     Mayes is a model whose career started when her photos won first place in prestigious photography awards and a spread in Maxim magazine. She is well known as a "suitcase model #5" from the hit game show Deal or No Deal. Mayes has appeared on Minute To

Win It, The Tonight Show, and The Jay Leno Show. She has also appeared in campaigns for

Coronet Diamonds, Volkswagen, Subaru, Bacardi, Vogue, Elle, In Style, Cosmopolitan, and

Marie Claire, to name a few. Mayes is currently a cover model and a star of the game Juiced 2:

Hot Import Nights. She has a modeling contract under CESD Talent Agency (Los Angeles,

California) as well as Brand Model & Talent Agency (Orange County, California), and as an

actress with Abstract Talent Agency.

49.    That we know of, Mayes is depicted in advertising to promote Watering Trough

on its Facebook page. This Image was intentionally altered to make it appear that Mayes was

either an employee working at Watering Trough that she endorsed the Club, or that she was

otherwise associated or affiliated with the Club.

50.    Mayes has never been employed at Watering Trough, has never been hired to

endorse Watering Trough, has never been otherwise associated or affiliated with Watering

Trough, has received no remuneration for Defendants' unauthorized use of her Image, and has

suffered, and will continue to suffer, damages as a result of same.

51.    Monaco is an American model, actress, and reality TV star.  She has appeared in

such publications as FHM and Men's Fitness magazine. Monaco has worked at Disney World, as

one of the performers portraying "Cinderella" and "Snow White" in the resort. Her connection

with Playboy began when she was chosen as one of Playboy's "Sexiest Bartenders 2004." She

then appeared on the cover of Playboy "Special Edition Girls of Summer" in August 2004.

Monaco was Playmate of the Month in June 2005 and in June 2006, Playmate of the Year. She

appeared in episodes The Girls Next Door and in the 2006 "Playmates at Play" swimsuit

calendar, shot in Las Vegas. Monaco was a contestant on CBS's hit reality TV show, BigBrother.

She has over 32.4 thousand Instagram followers and 72.5 thousand Twitter followers.

52.     That we know of, Monaco is depicted in advertising to promote Watering Trough on its Facebook page. This Image was intentionally altered to make it appear that Monaco was either an employee working at Watering Trough that she endorsed the Club, or that she was otherwise associated or affiliated with the Club.

53.     Monaco has never been employed at Watering Trough, has never been hired to endorse Watering Trough, has never been otherwise associated or affiliated with Watering Trough, has received no remuneration for Defendant's unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

54.     Sugden is, and at all times relevant to this action was, is an English glamor model, actress, host, and spokeswoman who is one of Europe's most famous celebrities. Sugden has appeared in hundreds of magazines and is one of the most featured Page 3 girls of all time. Sugden was featured as a Page 3 girl as recently as December 2017. That made a tally for 2017 of five features. Sugden has been featured in a number of films and was a star competitor in Celebrity Big Brother. Sugden has an official subscription-based website and has marketed her own products including a calendar for many years. https://onlyfans.com/rhianmarie Sugden has been involved in a number of charities and is often a spokeswoman for the prevention of animal cruelty. Sugden has over 1 million Social Media Followers.

55.     That we know of, Sugden is depicted in advertising to promote Watering Trough on its Facebook page. This Image was intentionally altered to make it appear that Sugden was either an employee working at Watering Trough that she endorsed the Club, or that she was otherwise associated or affiliated with the Club.

56.     Sugden has never been employed at Watering Trough, has never been hired to endorse Watering Trough, has never been otherwise associated or affiliated with Watering Trough, has received no remuneration for  unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

***Defendants' Business***

57.     Upon information and belief, both Defendants operated, during the relevant time period, Watering Trough, where they engaged in the business of selling alcohol and food in a sexually charged environment.

58.     Upon information and belief, and in furtherance of its promotion their promotion of Watering Trough, Defendants' own, operate and control Watering Trough's social media accounts, including its Facebook, Twitter, and Instagram accounts.

59.     Defendants used Watering Trough's Facebook, Twitter, and Instagram accounts to promote Watering Trough, and to attract patrons thereto.

60.     Defendants did this for their own commercial and financial benefit.

61.     Defendants have used, advertised, created, printed and distributed the Images of Plaintiffs, as further described and identified above, in order to create the false impression with potential clientele that each Plaintiff either worked as an employee working at Watering Trough, that she endorsed the Club, or that she was otherwise associated or affiliated with the Club.

62.     Defendants used Plaintiffs' Images and created the false impression that they worked at or endorsed Watering Trough to receive certain benefits therefrom, including but not limited to: monetary payments; increased promotional, advertising, marketing, and other public relations benefits; notoriety; publicity; as well as an increase in business revenue, profits, proceeds, and income.

63.     As Defendants were at all times aware, at no point have any of the above-named Plaintiffs ever been affiliated with or employed by Watering Trough and at no point have any of the Plaintiffs ever endorsed Watering Trough, or otherwise been affiliated or associated with Watering Trough.

64.     All of Defendants' activities, including their misappropriation of Plaintiffs' Images, and publication of same, were done without the knowledge or consent of Plaintiffs, and Defendants did not compensate Plaintiffs for their use of their Images.

65.     As such, Plaintiffs have never received any benefit from Defendants' use of their Images.

***Standard Business Practices in the Modeling Industry***

66.     It is common knowledge in the modeling industry that the hiring of a model for a commercial purpose involves a particularized methodology and process.

67.     The fee that a professional model, such as each of the Plaintiffs, will receive is negotiated by her agency, and involves consideration of, without limitation, at least the following factors: a) the reputation, earning capacity, experience, and demand of that particular model; b) the location where the photo shoot takes place, and the length thereof; c) where and how the images are going to be used by the client (e.g., company website, social media, television commercials, billboards or posters), known as "usage"; and, d) the length of time (known as the "term") the rights to use the photos will be assigned.  Most licenses to use a model's image are for 1, 2, or 3 year terms; but almost never is there a "lifetime" term.

68.     Defendant's Misappropriation of Plaintiffs' Images

69.     As detailed above, Defendants knowingly, and without the prior consent of any of the Plaintiffs, invaded Plaintiffs' privacy by using Plaintiffs' Images for commercial purposes in

order to promote Watering Trough by and through various marketing and promotional mediums including, without limitation, Watering Trough's website, Twitter, Facebook, and Instagram.

70. Defendants showcased Plaintiffs' Images on Watering Trough's social media pages to create the false impression that Plaintiffs worked at Watering Trough, endorsed, promoted or sponsored same, or were otherwise associated or affiliated with same.

71. Defendants did so to attract clientele to Watering Trough, promote Watering Trough, and thereby generate revenue for Defendants.

72. Defendants were aware that, by using Plaintiffs' Images, they were violating Plaintiffs' right to privacy, Plaintiffs' right of publicity, and creating a false impression to potential customers that Plaintiffs worked at and/or endorsed Watering Trough.

73. Unauthorized use of Plaintiffs' Images deprives them of income they are owed relating to the commercialization of their Images.

74. In addition, Plaintiffs allege that any improper or unauthorized use of their Images substantially injures their careers.

75. This is especially so insofar as each of Plaintiffs' Images have been associated with a strip club, and the implication of Defendants' use of Plaintiffs' Images is that they are employees of, endorse a night club, or are otherwise associated or affiliated with a night club.

76. At no point were any of the Plaintiffs ever affiliated with Watering Trough, or Defendants.

77. Each of Plaintiffs' Images was used without her consent.

78. At no point was any Plaintiff ever contacted by any Defendants, or any representative of any of the Defendants, to request the use of any of Plaintiffs' Images.

79.     Neither Defendant ever obtained, either directly or indirectly, permission to use any of Plaintiffs' Images.

80.     Neither Defendant ever paid any Plaintiff for its use of her Images on any promotional materials, including Watering Trough website, Twitter, Facebook, or Instagram accounts.

81.     Defendants used Plaintiffs' Images without their consent, and without providing remuneration, in order to permanently deprive each of the Plaintiffs of her right to use her Images.

82.     Upon information and belief, Defendants have taken the foregoing actions with the intent of causing irreparable harm to each of the Plaintiffs.

**FIRST CAUSE OF ACTION**
**(Violation of §43 of the Lanham Act, 15 U.S.C. §1125(a)(1)(B): False Advertising)**

83.     Plaintiffs hereby repeat and reallege each and every allegation set forth in the preceding paragraphs as if fully set forth hereon.

84.     The provisions of the Lanham Act, 15 U.S.C. §1125, et seq. apply to Defendants, and protect Plaintiffs from the conduct described hereon.

85.     As set forth hereon, each advertisement at issue in this action were false and misleading because no Plaintiff ever worked at Watering Trough, or agreed to appear in Watering Trough's advertisements.

86.     Given the false and misleading nature of the advertisements, Defendants had the capacity to deceive consumers and, upon information and belief, did so deceive consumers.

87.     Upon information and belief, said deceptive advertisements had a material effect on the purchasing decisions of consumers who attended Watering Trough.

88.    Insofar as Defendants' published these false and misleading advertisements on the internet, they had the capacity to affect interstate commerce, and, upon information and belief, did so affect interstate commerce.

89.    Despite the fact that Defendants were at all times aware that the Plaintiffs neither worked at, nor endorsed the Club, Defendants nevertheless used Plaintiffs Images in order to mislead potential customers as to Plaintiff's employment at and/or affiliation with the Club.

90.    Defendants knew that their use of Plaintiffs' Images would cause consumer confusion as to Plaintiffs' sponsorship and/or employment at the Club.

91.    Upon information and belief, Defendants' use of Plaintiffs' Images did in fact cause consumer confusion as to Plaintiffs' employment at and/or endorsement of the Club, and the goods and services provided by the Club.

92.    Due to Defendants' unauthorized use of Plaintiffs' Images in order to create a false advertisement prohibited by section 43 of the Lanham Act, Plaintiffs have been damaged in an amount to be determined at trial and are likewise entitled to punitive and exemplary damages.

## SECOND CAUSE OF ACTION
### (Violation of §43 of the Lanham Act, 15 U.S.C. §1125(a)(1)(A): False Association)

93.    Plaintiffs hereby repeat and reallege each and every allegation set forth in the preceding paragraphs as if fully set forth hereon.

94.    The provisions of the Lanham Act, 15 U.S.C. §1125, et seq. apply to Defendants, and protect Plaintiffs from the conduct described hereon.

95.    Defendants used Plaintiffs Images in order, inter alia, to create the false impression with the public that Plaintiffs were affiliated, connected, or associated with Watering Trough, or worked at, sponsored, or approved of Watering Trough's goods, services or commercial activities.

96.     This was done to promote and attract clientele to Watering Trough, and thereby generate revenue for the Defendants.

97.     Thus, this was done in furtherance of Defendants' commercial benefit.

98.     Despite the fact that Defendants were at all times aware that the Plaintiffs were neither affiliated, connected or associated with Watering Trough, nor worked at, sponsored, or approved of Watering Trough's goods, services or commercial activities, Defendants nevertheless used Plaintiffs Images in order to mislead potential customers as to Plaintiff's employment at and/or affiliation with Watering Trough.

99.     Defendants knew that their use of Plaintiffs' Images would cause consumer confusion as to Plaintiffs' sponsorship, affiliation, connection, association and/or employment at the Club.

100.     Upon information and belief, Defendants use of Plaintiffs' Images did in fact cause consumer confusion as to Plaintiffs' employment at and/or endorsement of the Club, and the goods and services provided by the Club.

101.     Due to Defendants' unauthorized use of Plaintiffs' Images in order to create a false endorsement prohibited by section 43 of the Lanham Act, Plaintiffs have been damaged in an amount to be determined at trial and are likewise entitled to punitive and exemplary damages.

## THIRD CAUSE OF ACTION
### (Right of Privacy)

102.     Plaintiffs hereby repeat and reallege each and every allegation set forth in the preceding paragraphs as if fully set forth hereon.

103.     As set forth hereon, Defendants have violated each Plaintiff's common law right to privacy under Pennsylvania law.

104.    Defendants have done so by appropriating each Plaintiff's likeness for commercial purposes without authority or consent.

105.     Defendants invaded and violated Plaintiffs' privacy and misappropriated their likeness by publishing their Images on Watering Trough's website or related social media accounts as part of Defendant's advertising campaign.

106.    At all relevant times, Watering Trough's website and social media accounts were used and operated by Defendants for advertising and trade purposes.

107.    Watering Trough's website and social media accounts were designed to attract business to the Club and generate revenue for Defendants.

108.    Plaintiffs are informed and believe and hereon allege that Defendants posted and publicized their image and likeness in a manner that was hidden, inherently undiscoverable, or inherently unknowable, in that Defendants published their image and likeness on social media threads that, over time, are (for example, but not limited to) "pushed" down in time from immediate visibility.

109.    Plaintiffs are further informed and believe and hereon allege that discovery will prove that Defendant's republicized Plaintiff's image and likeness on various occasions, via different mediums, after the initial date of the posting of their image and likeness and through the filing of this complaint.

110.    Plaintiffs are informed and believe and hereon allege that Defendants' republication of Plaintiffs' images and likenesses was altered so as to reach a new audience and/or promote a different product.

111.    Upon information and belief, Defendants' use of Plaintiffs' Images did in fact attract clientele and generate business for Watering Trough.

- 19 -

112.     At no point did any or either Defendant ever receive permission or consent to use any Plaintiff's Image on their website or social media account.

113.     Defendants were at all relevant times aware that they never received any of the Plaintiffs' permission or consent to use their Images on any website or social media account, or on any other medium, in order to promote the Club.

114.     At no point did Defendants ever compensate Plaintiffs for their use of the Images.

115.     No applicable privilege or authorization exists for Defendants' use of Plaintiffs' Images.

**<u>FOURTH CAUSE OF ACTION</u>**
**(Right of Publicity, Unauthorized Use of Name or Likeness: 42 Pa. Cons. Stat. § 8316)**

116.     Plaintiffs hereby repeat and reallege each and every allegation set forth in the preceding paragraphs as if fully set forth hereon.

117.     As set forth hereon, each Plaintiff has and had at the time of Defendants' misappropriation a commercial interest in her image, photo, persona and likeness.

118.     Said commercial interest was developed by each Plaintiff through her investment of time, effort and money in her career, image, persona and likeness.

119.     As set forth herein, Defendants used each Plaintiff's image and likeness for commercial purposes by using same in Watering Trough advertising.

120.     Defendants did so without any Plaintiff's consent, written or otherwise.

121.     Plaintiffs are further informed and believe and hereon allege that discovery will prove that Defendant's republicized Plaintiff's image and likeness on various occasions, via different mediums, after the initial date of the posting of their image and likeness and through the filing of this complaint.

122.    Plaintiffs are informed and believe and hereon allege that Defendants' republication of Plaintiffs' images and likenesses was altered so as to reach a new audience and/or promote a different product.

123.    Defendants were at all relevant times aware that they never received any of the Plaintiffs' permission or consent to use their Images on any website or social media account, or on any other medium, in order to promote the Club.

124.    At no point did Defendants ever compensate Plaintiffs for their  use of their Images.

125.    No applicable privilege or authorization exists for Defendants' use of Plaintiffs' Images.

## FIFTH CAUSE OF ACTION
### (Common Law Right of Publicity)

126.    Plaintiffs hereby repeat and reallege each and every allegation set forth in the preceding paragraphs as if fully set forth hereon.

127.    As set forth hereon, each Plaintiff has and had at the time of Defendants' misappropriation a commercial interest in her image, photo, persona and likeness.

128.    Said commercial interest was developed by each Plaintiff through her investment of time, effort and money in her career, image, persona and likeness.

129.    As set forth herein, Defendants used each of the Plaintiffs' images and likenesses for commercial purposes by using same in Watering Trough advertising.

130.    Defendants did so without any of the Plaintiff's consent, written or otherwise.

131.    Plaintiffs are further informed and believe and hereon allege that discovery will prove that Defendants republicized Plaintiffs' images and likenesses on various occasions, via different mediums, after the initial date of the posting of their image and likeness and through the

filing of this complaint.

132.    Plaintiffs are informed and believe and hereon allege that Defendants'
republication of Plaintiffs' image and likeness was altered so as to reach a new audience and/or
promote a different product.

133.    Defendants were at all relevant times aware that they never received any of the
Plaintiffs' permission or consent to use their Images on any website or social media account, or
on any other medium, in order to promote the Club.

134.    At no point did Defendants ever compensate any of the Plaintiffs for their use of
their Images.

135.    No applicable privilege or authorization exists for Defendants' use of Plaintiffs'
Images.

**SIXTH CAUSE OF ACTION**
**(Pennsylvania's Unfair Trade Practices Act and Consumer Protection Law ("UTPCPL"),**
**73 P.S. § 201-1-201-9.2)**

136.    Plaintiffs hereby repeat and reallege each and every allegation set forth in the
preceding paragraphs as if fully set forth hereon.

137.    Defendants operated Watering Trough website and social media accounts in order
to promote Watering Trough, to attract clientele thereto, and to thereby generate revenue for
Defendants.

138.    As such, Defendants' operation of the website and social media accounts, and
their publication of Images thereon, was consumer-oriented in nature and occurred in the trade
and commerce with the State of Pennsylvania.

139.    Defendants published Plaintiffs' Images on Watering Trough website and social
media accounts in order to create the false impression that Plaintiffs were either employees
working at the Club, endorsed the Club, or were otherwise affiliated, associated, or connected

with the Club.

140.    As such, Defendants' intent in publishing Plaintiffs' Images was to mislead the public as to Plaintiffs' employment at and/or affiliation with the Club.

141.    Such conduct constitutes unfair and deceptive acts and practices, and unfair competition under Pennsylvania law.

142.    Defendants' advertising practices offends the public policy of Pennsylvania insofar as it constitutes misappropriation of Plaintiffs' property rights in their own Images, and invasion of Plaintiffs' privacy, for Defendants' commercial benefit.

143.    Defendants' advertising practices are immoral, unethical, oppressive and unscrupulous insofar as they have sought to confuse the public for their own commercial benefit by implying that Plaintiffs are affiliated, endorse, are associated with and/or are employed at Watering Trough.

144.    Defendants' advertising practices cause substantial injury to consumers by creating the false impression that Plaintiffs are employed at, endorse, or are otherwise affiliated with, Watering Trough.

145.    There are no benefits to Defendants' advertising practices as set forth hereon except a benefit to Defendants' own commercial interests.

146.    As a result of Defendant's unauthorized and misleading publication of Plaintiffs' Images on their Club's website and social media accounts, each of the Plaintiff's reputations was injured, and each of the Plaintiff's ability to market herself as a model was injured.

147.    As a result of Defendant's unauthorized and misleading use of Plaintiffs' Images, Plaintiffs have suffered damages in an amount to be determined at trial, including punitive and exemplary damages.

148.     As required by Pennsylvania's Unfair Trade Practices Act and Consumer

Protection Law ("UTPCPL"), 73 P.S. § 201-1-201-9.2), Plaintiffs have transmitted a copy of this

Complaint to the Office of the Attorney General of the State of Pennsylvania.

### SEVENTH CAUSE OF ACTION
**(Defamation)**

149.     Plaintiffs hereby repeat and reallege each and every allegation set forth in the

preceding paragraphs as if fully set forth hereon.

150.     As detailed throughout this Complaint, Defendants have published altered Images

of Plaintiffs in order to promote their Club to the general public and potential clientele.

151.     Defendants' publication of said Images constitutes a representation that Plaintiffs

was either employed by the Club, that they endorsed the Club, or that they had some affiliation

with the Club.

152.     None of these representations were true.

153.     In publishing Plaintiffs' altered Images, it was Defendants' intention to create a

false impression to the general public that Plaintiffs were employees working at the Club, or

endorsed the Club.

154.     Defendants were at least negligent in publishing Plaintiffs' Images because they

knew, or should have known, that Plaintiffs were not employed by the Club, had no affiliation

with the Club, had not consented to the use of their Images, and had not been compensated for

the use of their Images.

155.     In the alternative, Defendants published the Images of Plaintiffs with actual

malice because they knew that Plaintiffs were not employed by the Club, had no affiliation with

the Club, had not consented to the use of their Images, and had not been compensated for the use

of their Images.

156. Despite Defendants' knowledge and awareness of these facts, they nevertheless made the decision to publish Plaintiffs' Images to attract clientele and generate revenue for themselves.

157. Defendants' publication of Plaintiffs' Images constitutes defamation under Pennsylvania law because said publication falsely accuses each Plaintiff of having acted in a manner – i.e., working as an employee of and/or endorsing a night club - which would subject each Plaintiff to hatred, shame, obloquy, contumely, odium, contempt, ridicule, aversion, ostracism, degradation, or disgrace, and/or could induce an evil opinion of Plaintiffs in the minds of right-thinking persons, and/or could deprive each Plaintiff of confidence and friendly intercourse in society.

158. Defendant's publication of Plaintiffs' Images likewise constitutes defamation per se under Pennsylvania law because said publication would tend to injure each Plaintiff in her trade, business, and profession as a professional model.

159. This is because any company or brand that sought to hire any of the Plaintiffs as a company or brand representative would be less likely to do so upon learning that she was an employee of and/or promoting a night club, an inference which Defendants' publication of the Images support.

160. Defendants' publication of Plaintiffs' Images likewise constitutes defamation per se under Pennsylvania law because, insofar as said publication falsely portrays each of the Plaintiffs as a nightclub employee, it imputes unchastity to her.

161. Defendants' publication of Plaintiffs' Images caused Plaintiffs to suffer damages in an amount to be determined at trial and are likewise entitled to punitive and exemplary damages.

## EIGHTH CAUSE OF ACTION

**(Negligence and *Respondeat Superior*)**Plaintiffs hereby repeat and reallege each and every

allegation set forth in the preceding paragraphs as if fully set forth hereon.

163.    Plaintiffs are further informed and believe and hereon allege that Defendants

maintain or should have maintained employee policies and procedures which govern the use of

intellectual property, publicity rights, and/or the image and likeness of individuals for

promotional and advertising purposes which specifically prevent the unauthorized and non-

consensual use of intellectual property, publicity rights and/or the image and likeness of

individuals for promotional and advertising purposes.

164.    Further, Defendants should have maintained, or failed to maintain, policies and

procedures to ensure that their promotional and/or advertising materials and campaigns were not

deceptive or misleading in their advertising practices.

165.    Defendants owed a duty of care to Plaintiffs to ensure that their advertising and

promotional materials and practices did not infringe on their property and publicity rights.

166.    Defendants further owed a duty of care to consumers at large to ensure that their

promotional and/or advertising materials and campaigns were not deceptive or misleading in

their advertising practices.

167.    Defendants breached their duty of care to both Plaintiffs and consumers by failing

to either adhere to or implement policies and procedures to ensure that the use of intellectual

property, publicity rights, and/or the image and likeness of individuals for promotional and

advertising purposes were not unauthorized, non-consensual, or false and deceptive.

168.    Defendants further failed to enforce or implement the above-stated policies and/or

to communicate them to employees, and/or supervise its employees in order to ensure that these

policies, along with Federal and Pennsylvania law, were not violated.  Defendants breached their

duty of care to Plaintiffs and consumers by its negligent hiring, screening, retaining, supervising, and/or training of its employees and agents.

169.    Defendants' breach was the proximate cause of the harm Plaintiffs suffered when their Images were published without their consent, authorization, and done so in a false, misleading and/or deceptive manner.

170.    As a result of Defendants' negligence, Plaintiffs have suffered damages in an amount to be determined at trial.

## NINTH CAUSE OF ACTION
### (Conversion)

171.    Plaintiffs hereby repeat and reallege each and every allegation set forth in the preceding paragraphs as if fully set forth hereon.

172.    Each Plaintiff is, and at all relevant times were, the exclusive owners of all right, title and interest in their Images, and have property interests thereon.

173.    By the conduct detailed above, Defendants converted Plaintiffs' property rights in their Images for their own use and financial gain Images for its own use and financial gain.

174.    As a result of Defendants' unlawful conversion of Plaintiffs' Images, and publication of same, Plaintiffs have suffered damages in an amount to be determined at trial.

## TENTH CAUSE OF ACTION
### (Unjust Enrichment)

175.    Plaintiffs hereby repeat and reallege each and every allegation set forth in the preceding paragraphs as if fully set forth hereon.

176.    As set forth in detail above, Defendants published Plaintiffs' Images in order to promote the Clubs to the general public and potential clientele.

177.    Defendants' publication was for the purpose of creating a false impression to the general public that Plaintiffs were either employees working at the Clubs, or endorsed the Clubs.

178.    Defendants' purpose in publishing Plaintiffs' Images was to benefit commercially due to their purported association with, employment of, and/or endorsement by Plaintiffs.

179.    Upon information and belief, Defendants did in fact benefit commercially due to their unauthorized use of Plaintiffs' Images.

180.    Defendants have been enriched by their unauthorized control over, and publication of, Plaintiffs' Images because said publication has assisted Defendants in attracting clientele to their Clubs.

181.    Plaintiffs have not been compensated for Defendants' commercial exploitation of their Images, and thus any financial benefit which Defendants received due to said exploitation is unjust.

182.    As such, Plaintiffs have been damaged in an amount to be determined at trial.

## ELEVENTH CAUSE OF ACTION
### (Quantum Meruit)

183.    Plaintiffs hereby repeat and reallege each and every allegation set forth in the preceding paragraphs as if fully set forth hereon.

184.    Plaintiffs are each internationally known models who earn their livings appearing in, inter alia, commercials, advertisements, and publications on behalf of companies and brands.

185.    Companies and brands that choose to hire Plaintiffs compensate them for their appearances.

186.    Although Defendants have availed themselves of the benefit of being associated with Plaintiffs, and making it appear to potential customers that Plaintiffs either work at their Club, endorse their Club, or are otherwise affiliated with their Club, Defendants have not compensated Plaintiffs.

187.    Plaintiffs are therefore entitled to reasonable compensation for the Clubs'

unauthorized use of their Images.

## DEMAND FOR JURY TRIAL

Plaintiffs demand a trial by jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request Judgment in their favor and against Defendants as follows:

(a) For actual damages, in an amount to be determined at trial, relating to Plaintiffs' first through eleventh causes of action;

(b) For an order permanently enjoining Defendants from using Plaintiffs' Images to promote the Club;

(c) For punitive damages, in an amount to be determined at trial, pursuant to CUPTA 42-110g(a);

(d) For all costs and attorneys' fees incurred by Plaintiffs in the prosecution of this Action pursuant to the Lanham Act, 15 U.S.C. § 1117; and

(e) For such other and further relief as the Court may deem just and proper.

OF COUNSEL:
John V. Golaszewski, Esquire*
THE CASAS LAW FIRM, PC
1740 Broadway, 15th Floor
New York, New York
T: 646-872-3178
F: 855.220.9626
john@talentrights.law

Dated: December 18, 2023

*Pro Hac Vice Application Forthcoming

/s/ Gerald B. Baldino, III
Gerald B. Baldino, III, Esquire
Attorney I.D. No. 326111
SACCHETTA & BALDINO
308 East Second Street
Media, PA 19063
P: (610) 891-9212
F: (610) 891-7190
gbaldino@sbattorney.com
*Attorney for Plaintiffs*